**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| LISA DENSON,<br><br>Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | Civil Action No. 1:25-cv-03403-NYW<br><br>District Judge Nina Y. Wang<br><br>Magistrate Judge Kathryn A. Starnella |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

DATED: January 9, 2026

Ada W. Dolph
adolph@seyfarth.com
Taylor Iaculla
tiaculla@seyfarth.com
SEYFARTH SHAW LLP
233 S. Wacker Dr., Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

*Attorneys for Defendant*
*United Airlines, Inc.*

**TABLE OF CONTENTS**

**Page**


INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 2

I. United's Workplace Policies Clearly Prohibited Hill's Conduct and Provided Avenues for Reporting ..... 2

II. Plaintiff's Employment With United ..... 3

III. Plaintiff's Allegations In The Amended Complaint ..... 5

LEGAL STANDARD ON A RULE 12(B)(6) MOTION TO DISMISS ..... 5

ARGUMENT ..... 6

I. Plaintiff's Title VII Claim (Count 1) Fails To State A Claim for Relief ..... 6

a. Any Claims For Acts That Occurred Before February 8, 2024 Are Time-Barred ..... 6

b. United Cannot Be Liable for Conduct Of Which It Was Unaware ..... 7

II. Plaintiff's Claims Against United Fail Under Both Federal and State Law ..... 8

a. Conduct That Occurred Before The Federal Statute Was In Effect Cannot Support Plaintiff's Claim ..... 8

b. The Plain Language of Section 6851 Confirms United Cannot Be Liable for Hill's Conduct ..... 9

c. United Also Cannot Be Held Liable for Hill's Conduct Under Colorado Law ..... 11

d. Plaintiff Cannot Hold United Vicariously Liable Under Either Federal or State Law ..... 12

III. Plaintiff Fails to State a Claim For Negligent Hiring, Retention, or Supervision ..... 15

a. Plaintiff's Claim Is Untimely ..... 15

b. Even Assuming Plaintiff's Claims Are Timely, Plaintiff Does Not Assert A Cognizable Negligent Hiring, Retention, or Supervision Claim ........ 16

CONCLUSION ........ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Anderson v. Adam's Mark Hotels & Resorts*,
2000 WL 390107 (10th Cir. April 18, 2000) ... 8

*Arnal v. Aspen View Condo. Ass'n, Inc.*,
245 F. Supp. 3d 1261 (D. Colo. 2017) ... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 5, 6

*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002) ... 10

*Bath Excavating & Constr. Co. v. Wills*,
847 P.2d 1141 (Colo. 1993) ... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 5

*Connes v. Molalla Transp. Sys., Inc.*,
831 P.2d 1316 (Colo. 1992) ... 16

*Daniels v. United Parcel Serv., Inc.*,
701 F.3d 620 (10th Cir. 2012) ... 6

*Debord v. Mercy Health Sys. of Kan., Inc.*,
737 F.3d 642 (10th Cir. 2013) ... 7

*DeClements v. RE/MAX LLC*,
No. 1:20-cv-02075-DDD-SKC, 2020 WL 9259326 (D. Colo. Oct. 13, 2020) ... 13, 14

*Dep't of Nat. Res. v. 5 Star Feedlot, Inc.*,
486 P.3d 250 (Colo., 2021) ... 11, 12

*Doe v. T-Mobile USA, Inc.*,
No. 4-23-CV-05166-SAB, 2024 WL 1705925 (E.D. Wash. Apr. 18, 2024) ... 12, 13

*Foster v. Ruhrpumpen, Inc.*,
365 F.3d 1191 (10th Cir. 2004) ... 7

*Frick v. Abell*,
198 Colo. 508, 602 P.2d 852 (Colo. 1979) .......... 15

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
130 F.3d 1381 (10th Cir. 1997) .......... 14

*Harsco Corp. v. Renner*,
475 F.3d 1179 (10th Cir. 2007) .......... 8

*Jemaneh v. Univ. of Wyo.*,
82 F. Supp. 3d 1281 (D. Colo. 2015) .......... 6

*Keller v. Koca*,
111 P.3d 445 (Colo. 2005) .......... 17, 18

*Khalik v. United Airlines*,
671 F.3d 1188 (10th Cir. 2012) .......... 6

*Klein v. Old Dominion Freight Line, Inc.*,
No. 22-cv-01900-STV, 2024 WL 4836236 (D. Colo. Sep. 6, 2024) .......... 14

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994) .......... 9

*Lindeman v. The Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*,
43 F. Supp. 3d 1197 (D. Colo. 2014) .......... 16

*Matney v. Barrick Gold of N. Am.*,
80 F.4th 1136 (10th Cir. 2023) .......... 2

*Montes v. Vail Clinic, Inc.*,
497 F.3d 1160 (10th Cir. 2007) .......... 6

*Montoya v. Am. Online, Inc.*,
No. CIV-07-1078 BB/ACT, 2009 WL 10708276 (D.N.M. Apr. 29, 2009) .......... 8

*Pedrow v. Barbour*,
No. 24-CV-04010 (PMH), 2025 WL 1381500 (S.D.N.Y. May 12, 2025) .......... 10

*Prairie Mountain Publ'g Co., LLP v. Regents of Univ. of Colo.*
491 P.3d 472 (Colo. App., 2021) .......... 11

*Raleigh v. Performance Plumbing & Heating*,
130 P.3d 1011 (Colo. 2006) .......... 16

*Ribas v. Mukasey*,
545 F.3d 922 (10th Cir. 2008) ........ 10

*Rivers v. Multacom Corp.*,
No. 24-CV-05585, 2025 WL 937206 (S.D.N.Y. March 24, 2025) ........ 11

*Robbins v. Okla.*,
519 F.3d 1242 (10th Cir. 2008) ........ 6

*Solis v. Dick's Sporting Goods, Inc.*,
No. 23-cv-01119-GPG-NRN, 2024 WL 3951024 (D. Colo. Aug. 27, 2024) ........ 14

*Trujillo v. Moore Bros., Inc.*,
2024 WL 1219701 (D. Colo. Mar. 1, 2024) ........ 16, 18

*United States v. Saenz-Gomez*,
472 F.3d 791 (10th Cir. 2007) ........ 10

*Van Osdol v. Vogt*,
908 P.2d 1122 (Colo. 1996) ........ 16

**Statutes**

C.R.S. § 13-21-1401, *et seq.* ........ 1, 5, 11, 15

C.R.S. § 13-80-108(1) ........ 15

15 U.S.C. § 6851, *et seq.* ........ 1, 5, 8, 9, 10, 11

42 U.S.C. § 2000e-5(e)(1) ........ 6

CONSOLIDATED APPROPRIATIONS ACT 2022, PL 117-103, March 15, 2022, 136 Stat 49 ........ 9

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........ 5

## INTRODUCTION

Defendant United Airlines, Inc. ("United") moves to dismiss Plaintiff's Amended Complaint with prejudice. The common thread that winds through each of Plaintiff's claims is that **Plaintiff never informed United at any time of Andrew Hill's conduct.** Despite her awareness of United's policies prohibiting the sharing of images without consent, Plaintiff simply never reported it to United, even after she was contacted by a police detective investigating Hill. Further, there was no reason for United to know of Hill's despicable conduct. While Plaintiff asserts that a police detective provided her name to United at the time a subpoena was issued to United in April 2024, United disputes this. In any event, even under Plaintiff's account, the earliest United could have learned of her name was April 2024.

As to Count 1, a Title VII claim for sex harassment, because the underlying EEOC Charge was not filed until December 4, 2024, Plaintiff is precluded from relying on the majority of her allegations. As to the allegations that are left, they fail on the merits.

Plaintiff's Counts 2 and 3, brought under 15 U.S.C. § 6851(b)(1)(A) ("Section 6851") and C.R.S. § 13-21-1401, respectively fail because, based on a plain reading of each statute, neither permit actions based on vicarious liability. Should the Court permit Plaintiff's claims to advance on a vicarious liability theory, both claims still fail as Plaintiff's allegations demonstrate that Hill lacked actual or apparent authority, and that United never ratified his conduct.

Count 4 is also untimely and fails on the merits because United had no reason to know at the time it hired Plaintiff or (under Plaintiff's account) until April 2024, that he

posed a risk to any individuals. Count 4 also fails as Plaintiff fails to show that she suffered any injury following April 2024, or that United's alleged breach of its duty toward her was the proximate cause of any such injury. In sum, Plaintiff's Complaint should be dismissed in its entirety with prejudice.

## FACTUAL BACKGROUND

### I. United's Workplace Policies Clearly Prohibited Hill's Conduct and Provided Avenues for Reporting

United maintains "employee rules of conduct, disciplinary mechanisms, [and] applicable policies and procedures." (*Id.* ¶ 77; *see also* Ex. A hereto).[1] As Plaintiff notes in her Complaint, such rules include United's "Working Together Guidelines," which expressly prohibit employees from "'displaying or distributing sexually suggestive or otherwise inappropriate pictures or objects [including, but not limited to graphics on social media". (*Id.*). United's policy also makes clear that there are multiple avenues for reporting harassment and discrimination, including: their supervisor, any other member of management, United's Employee Service Center, their HR Partner, or the Ethics and Compliance Helpline. (Ex. A at 7-8). Reports can also be made anonymously to the Ethics and Compliance Hotline by phone, an online portal, email, or mail. (*Id.* at 8). If an employee feels they "have been the victim of a crime" they are also encouraged to "contact local police." (*Id.* at 7).

[1] The Court may consider United's Working Together Guidelines without converting this motion to one for summary judgment because Plaintiff references them in her Complaint and they are central to her claims. *See Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1151 (10th Cir. 2023) ("A court may consider (1) documents that the complaint incorporates by reference [and] (2) documents referred to in the complaint if" they are central to the claim and undisputedly authentic) (citation and internal quotation omitted).

## II. Plaintiff's Employment With United

Plaintiff has been employed as a Flight Attendant with United since 2015. (ECF No. 16 ¶¶ 2, 37).[2] Consistent with United's policies, at the beginning of her employment with United, she underwent mandatory training "concerning misconduct between employees of United Airlines." (*Id.* ¶ 39). Beginning in 2016, Plaintiff began a romantic relationship with United First Officer Pilot Andrew Hill that included "private and consensual interactions." (*Id.* ¶¶ 51, 57, 63). During their relationship, which continued until 2021, Hill invited Plaintiff to fly with him on "flights as a passenger." (*Id.* ¶¶ 51, 56). On these trips, Plaintiff would stay in rooms reserved for Hill for his layover, and required to be paid for by United under its collective bargaining agreement with The Airline Pilots Association ("ALPA"), of which Hill was a member. (*Id.* ¶¶ 56, 61, 73). In 2017, Plaintiff discovered Hill had "disclosed intimate images and videos depicting her to third parties via the Internet" that had been obtained without her consent, and shared without her consent. (*Id.* ¶ 62). In September of 2021, the relationship between Plaintiff and Hill ended. (*Id.* ¶ 63, 65-66). Hill began stalking and harassing her in 2022, and this conduct continued through 2023. (*Id.* ¶ 63, 65-66).

Plaintiff did not report Hill's obtaining and sharing of intimate photos without her consent to United in 2017 when she first learned of it. (*Id.* ¶¶ 62, 68, 70, 100-104, 112-14). She also never reported to United that Hill had stalked or harassed her in 2022 or 2023. (*Id.*). Indeed, Plaintiff never reported any wrongdoing to United, except indirectly

---

[2] For purposes of this Motion only, the factual allegations in Plaintiff's Complaint are assumed to be true. Defendant does not admit the truth of these facts or any legal conclusions set forth in Plaintiff's Complaint.

when she filed her charge with the Equal Employment Opportunity Commission ("EEOC") on December 4, 2024, after Hill's employment with United had been terminated. (*Id.* ¶¶ 62, 68, 70, 100-104, 112-14). While Plaintiff remains a flight attendant employed by United, the December 2024 EEOC charge is the sole report she has ever made of any inappropriate conduct.

Plaintiff asserts that United learned of Hill's conduct (and her involvement) in April 2024 when a Utah detective was contacted by one of its Investigative Managers, Jason Fleming, after United received a subpoena for records relating to Hill. (*Id.* ¶ 71). Plaintiff alleges that the detective shared that Hill was under investigation for "identity fraud and distribution of pornography" and disclosed "the identification of numerous intimate . . . images depicting United Airlines flight attendants." (*Id.*). Plaintiff alleges but United disputes that the detective identified her as one of Hill's victims. (*Id.*). Hill was arrested in July 2024,[3] removed from service, and never flew for United again. (*Id.* ¶ 14). Hill was subsequently terminated after United followed the procedures required for termination under the collective bargaining agreement. (*See id.* ¶ 73). Plaintiff alleges that after Hill was arrested, she was approached by United employees who "ask[ed] her about Andrew Hill's criminal conduct and arrest" and "forced to endure conversations about" Hill. (*Id.* ¶ 74). Plaintiff alleges that United should have taken disciplinary action against Hill sooner than his arrest. (*Id.* ¶¶ 72, 73).

[3] The precise date of Hill's arrest was June 12, 2024, but for the purposes of this motion United accepts Plaintiff's allegation that it occurred in July 2024.

### III. Plaintiff's Allegations In The Amended Complaint

Plaintiff filed her Complaint in this Court on October 28, 2025 and an Amended Complaint ("AC") on November 24, 2025, each time naming United as the only defendant. Plaintiff brings four claims. In Count 1, Plaintiff brings a claim for sexual harassment in violation of Title VII. In Count 2, Plaintiff seeks to hold United vicariously liable under 15 U.S.C. § 6851(b)(1)(A), which permits "an individual whose intimate visual depiction is disclosed . . . without the consent of the individual, . . . by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person." Plaintiff's Count 3 alleges that United is vicariously liable under Colorado Statute § 13-21-1401, which provides a cause of action to "a depicted individual who is identifiable and who has suffered harm from a person's intentional disclosure or threatened disclosure of an intimate image that was private without the depicted individual's consent has a cause of action against the person if the person knew or acted with reckless disregard[.]" § 13-21-1403(2). In Count 4, Plaintiff alleges that United negligently hired, supervised, and retained Hill. (*Id.* ¶¶ 1, 3, 5).

## <u>**LEGAL STANDARD ON A RULE 12(B)(6) MOTION TO DISMISS**</u>

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts evaluate whether it is plausible, not merely

possible, from the allegations that the plaintiff is entitled to relief. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The elements of the cause of action will help determine whether Plaintiff has set forth a plausible claim. *Khalik v. United Airlines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Allegations that are legal conclusions, bare assertions, or merely conclusory, are not entitled to the assumption of truth. *Id.* at 679-80. And, where a litigant pleads facts undermining the allegations in her complaint, she can plead herself out of court. *Jemaneh v. Univ. of Wyo.*, 82 F. Supp. 3d 1281, 1299 (D. Colo. 2015).

## <u>ARGUMENT</u>

### I. Plaintiff's Title VII Claim (Count 1) Fails To State A Claim for Relief

#### a. Any Claims For Acts That Occurred Before February 8, 2024 Are Time-Barred

Plaintiff alleges that she was subject to sexual harassment from 2016 through April 2024. (ECF No. 16 ¶¶ 60, 62, 63, 65-66, 68). However, Plaintiff's Count 1, to the extent it relates to conduct prior to February 8, 2024, is time barred and should be dismissed. Plaintiff's sexual harassment claim arises under Title VII, (*id.* ¶¶ 83-96), which requires filing a charge of discrimination with the Equal Employment Opportunity Commission before suing. 42 U.S.C. § 2000e-5(e)(1). An EEOC charge must be filed within 300 days of the alleged act. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 628 (10th Cir. 2012); *see also* 42 U.S.C. § 2000e-5(e)(1). This limitations period starts on the date the employee learns of the adverse employment action. *Daniels*, 701 F.3d at 628. Any claim not filed within this statutory limit is time barred. *Id.*; *Montes v. Vail Clinic, Inc.*, 497 F.3d

1160, 1163, 1167-68 (10th Cir. 2007) (barring discriminatory discharge claims as charges were filed more than 300 days after the adverse action). The purpose of the administrative exhaustion requirement is both "to protect employers by giving them notice of the discrimination claims being brought against them, in addition to providing the EEOC with an opportunity to conciliate the claims." *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194–95 (10th Cir. 2004). Here, Plaintiff filed her Charge of Discrimination December 4, 2024. (Am. Compl. ¶ 32). As a result, any conduct occurring before February 8, 2024, including Hill's purported stalking, harassment, or disclosures of images or videos depicting Plaintiff, is untimely and cannot support her Title VII claim.

**b. United Cannot Be Liable for Conduct Of Which It Was Unaware**

Plaintiff alleges that United first became aware of Hill's conduct in April 2024. (Am. Compl. ¶ 71).[4] Accordingly, any alleged harassment that occurred prior to April 2024 cannot be used to support Plaintiff's Title VII claim. To assert a *prima facie* case of sexual harassment under Title VII, Plaintiff must show that (1) she is a member of a protected group; (2) she was subject to unwelcome conduct; (3) the harassment was based on her sex; (4) the harassment was so severe or pervasive that it altered a term, condition, or privilege of her employment; and (5) that defendant knew or should have known of the hostile work environment but did not adequately respond. *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 650 (10th Cir. 2013).

[4] United disputes this assertion, but again, assumes it to be true for the purposes of this motion to dismiss.

An employer is only "liable under Title VII if it has actual or constructive knowledge of harassment[.]" *Montoya v. Am. Online, Inc.*, No. CIV-07-1078 BB/ACT, 2009 WL 10708276, at *6 (D.N.M. Apr. 29, 2009) (citing *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007)). "This is relevant because employers are generally not liable under Title VII for acts their employees take against another employee away from work premises." *Montoya*, 2009 WL 10708276, at *6 (citing *Anderson v. Adam's Mark Hotels & Resorts*, 2000 WL 390107 *1 n.1 (10th Cir. April 18, 2000) (dismissing negligent supervision claim where plaintiff, a bartender at a hotel, was sexually assaulted by her supervisor as the employer did not have "complete authority" to control the room, the activities inside it, or reason to know the supervisor would cause the harm involved).

Here, Plaintiff avers that United first became aware of Hill's conduct in April 2024 and that his conduct also ceased in April 2024. (ECF No. 16 ¶¶ 68, 71-72). The only conduct that remains timely is that Plaintiff alleges that unidentified "United Airlines employees" "approached Plaintiff at work, asking her about Andrew Hill's criminal conduct and arrest." (*Id.* ¶ 74). Plaintiff does not allege that United itself had actual or constructive knowledge of such inquiries. Because Plaintiff's allegations demonstrate United had no actual or constructive knowledge of Hill's conduct prior to April 2024 and that Hill ceased engaging in such conduct in 2024, she fails to state a cognizable Title VII claim.

## II. Plaintiff's Claims Against United Fail Under Both Federal and State Law

### a. Conduct That Occurred Before The Federal Statute Was In Effect Cannot Support Plaintiff's Claim

In Count 2, Plaintiff brings a cause of action under federal statute 15 U.S.C. § 6851(b)(1)(A), based on "Andrew Hill . . . regularly distributing intimate images and videos

of her online from at least 2017 through April 2024[.]" (ECF No. 16 ¶ 68). However, Section 6851 did not go into effect until October 1, 2022. As a result, it cannot be applied retroactively to conduct that preceded that date. "The presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly[.]" *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (internal footnote omitted). As such, courts must not "give retroactive effect to statutes burdening private rights *unless Congress had made clear its intent*." *Id.* at 270 (emphasis added).

Section 6851 contains no "clear indication" that Congress intended its retroactive application. Rather, Congress made clear quite the opposite, specifying that Section 6851 was not to take effect upon enactment, but rather on "October 1 of the first fiscal year beginning after the date of [the Act's] enactment." CONSOLIDATED APPROPRIATIONS ACT 2022, PL 117-103, March 15, 2022, 136 Stat 49. Therefore, any factual allegations relating to conduct before October 1, 2022 cannot be used to maintain a viable Section 6851 claim.

**b. The Plain Language of Section 6851 Confirms United Cannot Be Liable for Hill's Conduct**

Even if Plaintiff could rely upon pre-October 1, 2022 conduct, her Section 6851 claim would still fail because it allows an action to be brought only against the actual person or party that disclosed the material. More specifically, Section 6851 permits a private action for:

> ***an individual whose intimate visual depiction is disclosed***, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made ***by a person*** who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, ***may bring a civil action against <u>that</u> person*** in an appropriate district court of the United States[.]

15 U.S.C. § 6851(b)(1)(A) (emphasis added).

"As in all cases of statutory construction," a court's "foremost duty is to ascertain the congressional intent and give effect to the legislative will." *Ribas v. Mukasey*, 545 F.3d 922, 929 (10th Cir. 2008) (quotation omitted). To determine congressional intent, this Court must first focus on the language of the statute. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) ("As in all statutory construction cases, we begin with the language of the statute. The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.") (quotation omitted)); *United States v. Saenz-Gomez*, 472 F.3d 791, 793-94 (10th Cir. 2007) ("[I]t is a well established law of statutory construction that, absent ambiguity or irrational result, the literal language of a statute controls."). "When the meaning of the statute is clear, it is both unnecessary and improper to resort to legislative history to divine congressional intent." *Saenz-Gomez*, 472 F.3d at 794 (quotation omitted).

By the federal statute's plain language, actions may only be brought against "that person" who disclosed the images. 15 U.S.C. § 6851(B)(1)(A). And as Plaintiff's Complaint makes clear, Hill was *the only person* who disclosed images and videos of her. (ECF No. 16 ¶¶ 62, 68, 70, 100-104). This dooms her claim and it should be dismissed with prejudice. *See Pedrow v. Barbour,* No. 24-CV-04010 (PMH), 2025 WL 1381500, at

*5 (S.D.N.Y. May 12, 2025) (dismissing § 6851 claim where plaintiff failed to plausibly connect a police officer's posting of nude videos of him despite alleging that the officer took the footage from the police stations systems); *see also Rivers v. Multacom Corp.*, No. 24-CV-05585, 2025 WL 937206, at *1-*2 (S.D.N.Y. March 24, 2025) (holding that where the plaintiff merely alleged "in conclusory terms that Defendants 'participated' in the illegal uploading of intimate videos of Plaintiff," this was insufficient to state facts entitling Plaintiff to relief from Defendants).

**c. United Also Cannot Be Held Liable for Hill's Conduct Under Colorado Law**

The Colorado Statute, too, allows a cause of action only against the party that made or threatened to make the unlawful disclosure. The law provides, in relevant part:

> (2) Except as otherwise provided in section 13-21-1404, a depicted individual who is identifiable and who has suffered harm from a person's intentional disclosure or threatened disclosure of an intimate image that was private without the depicted individual's consent has a cause of action against **the person** if the person knew or acted with reckless disregard for whether:
>
> (a) The depicted individual did not consent to the disclosure;
>
> (b) The intimate image was private; and
>
> (c) The depicted individual was identifiable.

C.R.S. § 13-21-1403(2) (emphasis added).

Colorado law holds that in interpreting a state statute, courts must "strive to give consistent, harmonious, and sensible meaning to all of a statute's language." *Prairie Mountain Publ'g Co., LLP v. Regents of Univ. of Colo.* 491 P.3d 472, 480 (Colo. App., 2021). To do so, courts must first consider "the plain language of the statute, giving the words and phrases their plain and ordinary meaning." *Dep't of Nat. Res. v. 5 Star Feedlot,*

*Inc.*, 486 P.3d 250, 256 (Colo., 2021). "If the statute is unambiguous—i.e., if it is not reasonably susceptible to multiple interpretations" it is applied "as written" and without "resorting to other rules of statutory construction." *Id.*

Here, the plain language makes clear that a private action may only be maintained against the person who made the disclosure. *See id.* As described *supra*, Plaintiff's Complaint attributes any and all disclosures of intimate images depicting her exclusively to Hill. (ECF No. 16 ¶¶ 62, 68, 112-114). Accordingly, Count 3 should also be dismissed with prejudice.

**d. Plaintiff Cannot Hold United Vicariously Liable Under Either Federal or State Law**

Plaintiff also attempts to hold United liable for Hill's conduct under both the federal and state statutes through vicarious liability principles. (ECF No. 16 ¶ 3, 119). To do so, Plaintiff principally relies on *Doe v. T-Mobile USA, Inc.*, No. 4-23-CV-05166-SAB, 2024 WL 1705925, at *3 (E.D. Wash. Apr. 18, 2024), which addressed the federal statute. (*Id.*). However, *T-Mobile* is clearly inapposite. *T-Mobile* involved a plaintiff who visited a T-Mobile store to upgrade her iPhone. *T-Mobile USA, Inc.*, 2024 WL 1705925, at *2-*3. The store offered to migrate customers' data during the upgrade which included pictures. *Id.* at *1. To migrate her data, the plaintiff had to enter her password several times. *Id.* at *2. After her data was migrated, plaintiff checked her social media accounts at home that evening and realized an unauthorized individual accessed and shared explicit photos of her on her Snapchat account, including videos of her engaging in sexual intercourse. *Id.* Upon returning to the store, the store manager provided plaintiff her old phone, during which time plaintiff noticed the seal on the envelope her phone was encased in had been

broken. *Id.* This conduct—where the employee's job duties in fact required that he migrate plaintiff's data and retain plaintiff's phone—is markedly different than Hill, a pilot who purportedly posted "intimate images" of Plaintiff he acquired during "overnight layovers" where Plaintiff accompanied him "as a passenger" and/or "during the ***private and consensual interactions*** of their relationship" which lasted from 2016 through 2021. (ECF No. 16 ¶¶ 51, 56-57, 62) (emphasis added). And unlike *T-Mobile*, Plaintiff alleges no facts supporting that a pilot's job duties required or permitted him to acquire or receive data concerning individuals, or that a pilot could reasonably be expected to gain access to other employees' intimate data by virtue of performing his or her duties (i.e., flying an aircraft). (*See generally id.*).

Moreover, for an employer to be vicariously liable for the acts of its employee, the employee must be acting within the scope of his employment. *Arnal v. Aspen View Condo. Ass'n, Inc.*, 245 F. Supp. 3d 1261, 1268 (D. Colo. 2017). This means that the employee had either apparent authority, actual authority, or the employer ratified the conduct. *DeClements v. RE/MAX LLC*, No. 1:20-cv-02075-DDD-SKC, 2020 WL 9259326, at *3 (D. Colo. Oct. 13, 2020).

Apparent authority exists when the employee "'reasonably believes, in accordance with the [employer's] manifestations to the [employee], that the [employer] wishes the [employee] so to act'" *Id.* (internal citation omitted). Here, despite Plaintiff's conclusory assertions that Hill was acting within the scope of his employment, Plaintiff acknowledges

that United maintained "Working Together Guidelines"[5] that expressly prohibited its employees from "displaying or distributing sexually suggestive or otherwise inappropriate pictures or objects" including social media posts. (ECF No. 16 ¶ 77). Thus, based on Plaintiff's own allegations, Hill did not possess apparent authority. (*Id.* ¶ 77).

Nor did Hill have actual authority. Actual authority is present "when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *DeClements*, 2020 WL 9259326, at *3. Again, as a United employee, Plaintiff was similarly subject to and aware of United's Working Together Guidelines prohibiting Hill's conduct. (ECF No. 16 ¶¶ 2, 37, 77). She therefore could not have held a reasonable belief that United authorized Hill's conduct.

As to ratification, Counts 3 and 4 fare no better. Ratification exists when an employer affirms another's act in such a way that "the act is given effect as if done by an agent acting with actual authority." *DeClements,* 2020 WL 9259326, at *3. To ratify conduct, though, an employer "must have knowledge of the facts and there must be some conduct indicating assent to those known facts." *Solis v. Dick's Sporting Goods, Inc.*, No. 23-cv-01119-GPG-NRN, 2024 WL 3951024, at *4 (D. Colo. Aug. 27, 2024). "Retention of an employee 'is evidence which can tend to prove ratification' but 'retention in employment, standing alone, is not conclusive of such ratification.'" *Klein v. Old Dominion*

[5] The Tenth Circuit permits a district court to consider documents referred to in the complaint if the documents are referenced by and central to the plaintiff's claim. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (recognizing that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss").

*Freight Line, Inc.*, No. 22-cv-01900-STV, 2024 WL 4836236, at *3 (D. Colo. Sep. 6, 2024) (quoting *Frick v. Abell*, 198 Colo. 508, 602 P.2d 852, 856 (Colo. 1979)).

Plaintiff's *only* allegation to support her ratification theory is that Hill continued to be employed by United. Aside from the conclusory allegations that Hill was acting "in the course and scope of his employment with United," (ECF No. 16 ¶ 47), Plaintiff's Amended Complaint alleges that, at the earliest, a police detective investigating the matter reportedly told a United investigator in April 2024 that Hill disclosed images depicting United "flight attendants, including Plaintiff," but did not terminate his employment until after his arrest. (*Id.* ¶¶ 71, 73). As such, Plaintiff pleads insufficient facts to demonstrate that United ratified Hill's conduct. Her claims should be dismissed.

## III. Plaintiff Fails to State a Claim For Negligent Hiring, Retention, or Supervision

### a. Plaintiff's Claim Is Untimely

In Colorado, tort actions must be brought within two years after the cause of action accrues. C.R.S. § 13-80-102. A cause of action is "considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." C. R. S. § 13-80-108(1).

In her Complaint, Plaintiff states that "[i]n or around 2017," she discovered Hill disclosed intimate images of her to third parties, (ECF No. 16 ¶ 62) and that he began stalking and harassing her beginning in 2022. (*Id.* ¶ 65). Using the last possible day of 2022, Plaintiff's alleged injury accrued no later than December 31, 2022. Because Plaintiff filed her first complaint on October 28, 2025 (ECF No. 1), she failed to satisfy the

applicable two-year statute of limitations period, and her Colorado tort claims are time barred and cannot be cured by amendment.

**b. Even Assuming Plaintiff's Claims Are Timely, Plaintiff Does Not Assert A Cognizable Negligent Hiring, Retention, or Supervision Claim**

"Negligent hiring involves an 'employer's responsibility for the dangerous propensities of the employee, which were known or should have been known by the employer at the time of hiring.'" *Lindeman v. The Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 43 F. Supp. 3d 1197, 1209 (D. Colo. 2014). Thus, an employer is liable for negligent hiring only if, at the time of hiring, the employer had reason to believe that hiring this person would create an undue risk of harm to third parties. *Van Osdol v. Vogt*, 908 P.2d 1122, 1132 n.17 (Colo. 1996); *Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316, 1322 (Colo. 1992); *Trujillo v. Moore Bros., Inc.*, 2024 WL 1219701, at *3 (D. Colo. Mar. 1, 2024). The scope of an employer's legal duty rests on the employer's actual knowledge at the time or hiring or reason to believe the person being hired, due to some attribute of character or prior conduct, would create an undue risk of harm to third parties in carrying out their employment responsibilities. *Raleigh v. Performance Plumbing & Heating*, 130 P.3d 1011, 1016–17 (Colo. 2006) (citation omitted). Here, Plaintiff does not allege that United had any knowledge at the time of Hill's hiring of any characteristic of prior conduct of Hill's that would have created an unreasonable risk of harm to third parties or that he caused her injury. Her claims focus solely on Hill's post-hire conduct. (ECF No. 16 ¶¶ 41, 51, 54). To the extent Plaintiff raises a negligent hiring claim, it must be dismissed for failure to allege *any* facts supporting such an action.

Plaintiff also brings a negligent supervision claim is based on United's purported "fail[ure] to adequately supervise and/or retain Andrew Hill to prevent the continued harassment and discrimination of Plaintiff." (ECF No. 16 ¶ 123). To state a claim for negligent supervision, Plaintiff must plead that the employer had "a duty to prevent an unreasonable risk of harm to third persons to whom the employer knows or should have known that the employee would cause harm." *Keller v. Koca*, 111 P.3d 445, 448 (Colo. 2005). An employer's liability is "predicated on the employer's antecedent ability to recognize a potential employee's 'attributes of character or prior conduct' which would create an undue risk of harm to those with whom the employee came in contact in executing his employment responsibilities." *Id.* at 448. "Thus, where a plaintiff asserts a claim for negligent supervision, the question of whether the employer owes a duty of care to the injured third party boils down to issues of knowledge and causation[.]" *Id.* This requires that "there . . . be a connection between the employer's knowledge of the employee's dangerous propensities and the harm caused." *Id.* at 450. Whether a defendant owed the plaintiff a legal duty is "a question of law to be determined by the court." *Id.* at 448 (citing *Bath Excavating & Constr. Co. v. Wills*, 847 P.2d 1141, 1147 (Colo. 1993)).

Based on Plaintiff's allegations, United did not, and could not, have possessed actual or constructive knowledge prior to April 2024 that Hill engaged in conduct that would have created a risk that he would disclose intimate images of anyone, let alone United's employees. (ECF No. 16 ¶ 71). Furthermore, Plaintiff makes no allegation that, at any point, United was aware that Hill engaged in "stalking" or "harassment" of her

between 2022 and 2023. (*Id.* ¶ 66.) Accordingly, Plaintiff fails to plead that United owed her a duty prior to April 2024. *See Keller*, 111 P.3d at 448 (noting liability depends on the ability to reasonably foresee that an employee would pose an undue risk to others).

To the extent that Plaintiff asserts a negligent retention claim based on United's conduct following April 2024, during which time she alleges "no corrective action was taken" against Hill, (ECF No. 16 ¶ 71), this too is insufficient to support her claim. To state a claim for negligent retention, Plaintiff must establish that: (1) United owed her a duty not to subject her to an unreasonable risk of harm; (2) United breached that duty; (3) Plaintiff suffered an injury; (4) United's breach was the proximate cause of her injury; and (5) the existence of an agency relationship. *Keller*, 111 P.3d at 447-48; *Trujillo*, 2024 WL 1219701, at *3, *6. However, even assuming Plaintiff can satisfy elements one through two and five, Plaintiff does not satisfy the third or fourth elements of her claim.

Based on the Complaint, Plaintiff suffered no injury after April 2024, the same time in which United was purportedly made aware of Hill's conduct toward her. (*See generally* ECF No. 16). Indeed, Plaintiff states that "police confirmed that Andrew Hill had been impersonating Plaintiff and regularly distributing intimate images and videos of her from at least 2017 through April 2024." (*Id.* ¶ 68). She further describes that such "distributions" were made through accounts created and maintained by Hill. (*Id.*). Assuming, *arguendo*, that United breached a duty to Plaintiff after it learned of the allegations in April 2024, any breach neither resulted in injury to nor proximately caused any injury upon Plaintiff, as Hill's conduct ceased in April 2024. For these reasons, Plaintiff's negligent retention claim against United fails and must be dismissed.

## CONCLUSION

For these reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Amended Complaint, *with prejudice*, because her claims are fatally flawed and cannot be cured with any amendment.

DATED: January 9, 2026

*/s/ Ada W. Dolph*
Ada W. Dolph
adolph@seyfarth.com
Taylor Iaculla
tiaculla@seyfarth.com
SEYFARTH SHAW LLP
233 S. Wacker Dr., Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

*Attorneys for Defendant*
*United Airlines, Inc.*

## CERTIFICATE OF CONFERRAL

In accordance with Civ. Practice Standard 7.1B, I certify that on December 17, 2025, counsel for Defendant conferred with counsel for Plaintiff regarding the subject-matter of this Motion, who indicated their opposition and confirmed she would not further amend her Complaint at this time.

*/s/ Ada W. Dolph*
Ada W. Dolph

**CERTIFICATE REGARDING THE USE OF GENERATIVE ARTIFICIAL INTELLIGENCE**

I, Ada W. Dolph, hereby certify that generative artificial intelligence was not used to draft this filing.

*/s/ Ada W. Dolph*
Ada W. Dolph

**CERTIFICATE OF SERVICE**

I, Ada W. Dolph, do hereby certify that I have caused a true and correct copy of the foregoing to be served upon the following counsel of record, via the Court's ECF system, on January 9, 2026.

*/s/ Ada W. Dolph*
Ada W. Dolph