**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| LISA DENSON,<br><br>Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | Civil Action No. 1:25-cv-03403-NYW<br><br>District Judge Nina Y. Wang<br><br>Magistrate Judge Kathryn A. Starnella |

# DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

DATED: March 13, 2026

Ada W. Dolph
adolph@seyfarth.com
Taylor Iaculla
tiaculla@seyfarth.com
SEYFARTH SHAW LLP
233 S. Wacker Dr., Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

*Attorneys for Defendant*
*United Airlines, Inc.*

## INTRODUCTION

Plaintiff's Opposition to Defendant's Motion to Dismiss provides no basis upon which this Court may disregard well-settled precedent establishing that her claims are insufficient as a matter of law. Instead, she attempts to distract from the required elements of each claim. As to Count 1, Plaintiff argues that "generalized knowledge" about pilots was somehow notice to United that Andrew Hill would unlawfully take and share intimate images of her without her consent. As to Count 2, under 15 U.S.C. § 6851*,* Plaintiff identifies no precedent permitting retroactive application of the statute. Moreover, Plaintiff's insistence that sharing pornographic images is within the scope of employment for a United pilot is implausible, particularly in light of the Working Together Guidelines ("Guidelines") which plainly state otherwise. Finally, Hill acted outside the scope of his employment and without United's authorization or assent, making the imposition of vicarious liability inappropriate and warranting dismissal of her C.R.S. § 13-21-1403 (Count 3) and Negligent Hiring, Supervision, and Retention claims (Count 4).

## ARGUMENT

### I. Tenth Circuit Law Permits This Court To Consider The Working Together Guidelines Quoted By Plaintiff In Her Amended Complaint.

Plaintiff's Opposition incorrectly asserts that this Court should disregard United's March 2024 Guidelines, protesting that Plaintiff's Complaint only "reference[d] them once." (ECF No. 32, ("Opp."), at p. 7). Plaintiff further argues that United is using the Guidelines to establish "fact-based defenses" and "not facts found in the Complaint." (*Id.*). Neither supposition is correct.

First, Plaintiff's protests notwithstanding, it is well settled in this circuit (and in every

other) that in deciding a motion to dismiss, a court may consider documents referenced in a complaint "central to the plaintiff's claim and [where] the parties do not dispute the documents' authenticity[.]" *Nowell v. Medtronic, Inc.*, No. 19-2073, 2021 WL 4979300, at *7 n.7 (10th Cir. Oct. 27, 2021) (internal citation omitted). Here, Plaintiff referenced the Guidelines in her Complaint, quoted the choice portions she chose to feature, and does not dispute their authenticity. (ECF No. 16, ("Compl.") ¶ 77; Opp. at p. 7). It is only fair, and consistent with precedent, for the full text of the Guidelines to be considered in evaluating the viability of Plaintiff's claims. Moreover, to the extent Plaintiff has misquoted or misstated the Guidelines, the document controls—making it even more important that they (and not Plaintiff's version of them) be considered. *See Pembroke v. Trans Union, LLC*, No. 16-cv-03194-CMA-STV, 2017 WL 6463254, at *5 n.6 (D. Colo. Dec. 19, 2017) ("if the documents central to a plaintiff's claim contradict the [complaint's] allegations . . . the documents control and [the] Court need not accept as true the [complaint's] allegations").

Second, and contrary to Plaintiff's characterization, United uses the Guidelines not to establish fact-based defenses but to demonstrate that Hill could not have been acting in the scope of his employment if he was acting contrary to its well-established policies. (ECF No. 25, "Mot.", at pp. 25-26). The Guidelines also indicate that Plaintiff could not have reasonably believed that Hill acted as an agent of United as his conduct deviated from its Guidelines, which she both cites and quotes in her Complaint. (*Id.*, Compl. ¶ 77.) Plaintiff placed the Guidelines at issue; she cannot now use her limited excerpts of them as a shield to fend off the legal flaws in her claims.

## II. That United Knew Of One Other Pilot's Conduct Does Not Establish That United Had Notice of Hill's Conduct (Count 1).

In her Opposition, Plaintiff alleges that United "knew or should have known of the harassment" against her because she experienced "[y]ears of exploitation[.]" (Opp., at p. 9). While United is sympathetic to Plaintiff, the fact remains that at no time during those years or later did Plaintiff report Hill's conduct to United. Plaintiff also claims that United had "institutional notice," citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998) and *Jackson v. Kan. City Kan. Pub. Sch. Unified Sch. Dist.*, 779 F. App'x 586 (10th Cir. 2020). (Opp. at p. 9). Neither case supports Plaintiff's position. In *Jackson*, the Tenth Circuit declined to find actual notice occurred until plaintiff actually reported the conduct. 779 F. App'x at 591. Similarly, in *Adler*, plaintiff argued that her harassment was so pervasive that knowledge should be inferred. 144 F.3d at 675. The Tenth Circuit rejected this argument, noting it "would be illogical to require for this inference only the level of pervasiveness essential to make out a hostile [sex] environment claim. If this were the rule, knowledge would be attributed to employers in all cases . . . founded on pervasiveness." *Id.* at 675.

Subsequent to *Adler*, the Tenth Circuit has clarified that it has "never imposed an affirmative duty on employers to monitor their employees to make sure they are behaving appropriately unless the employer *knows or should have known* that the employee poses a risk to others." *Frank v. Heartland Rehab. Hosp., LLC*, 2023 WL 4444655, at *4 (10th Cir. July 11, 2023) (emphasis added). Rather, notice can only be imputed based on "the 'extent and seriousness of the earlier harassment and the similarity and nearness in time to the later harassment.'" *Id.* at *3 (citing *Kramer v. Wasatch Cnty. Sheriff's Off.*, 743 F.3d

726, 756 (10th Cir. 2014)). The *Frank* court declined to find actual notice until plaintiff reported the harassment, *i.e.*, four months after the harassment began. *Id.* at *1, *4. Critically, the *Frank* court also declined to find that the employer had constructive or institutional notice despite other employees complaining about the same individual, including one employee filing a charge with the EEOC in which she alleged that the CEO knew of the individual's harassing conduct some two years earlier. *Id.* at *4.

As a matter of law, Plaintiff's allegations fail to meet this exception and no constructive notice can be imputed to United. Most significantly, Plaintiff does not dispute that she **never** reported Hill to United. (Opp.. 32, at p. 9). Plaintiff nonetheless argues that United should have known about Hill's misconduct because it was named as a defendant in a lawsuit filed in 2018 (resolved by consent decree in 2020) that involved unlawful image sharing based on an anonymous "Jane Doe" complaint allegedly provided to United in 2011 about an unidentified United Captain. (*Id.*). And finally, Plaintiff argues that there was an online article published describing harassment at United. (*Id.*).

None of the incidents alleged by Plaintiff involved Hill, or Plaintiff. And none has been, or is, linked to Plaintiff's allegations against Hill. United employs roughly 18,000 pilots at any given time; the sparse connections Plaintiff attempts to create between the 2011 conduct of one pilot and Hill are insufficient as a matter of law to conclude United somehow had constructive notice of Hill's conduct. *See, e.g.*, *Ford v. West*, 222 F.3d 767, 776 (10th Cir. 2000) ("Only when the acts of harassment are 'so egregious, numerous, and concentrated as to add up to a campaign of harassment' will the employer be liable for failure to discover the harassment."); *Frank*, 2023 WL 4444655, at *1-*4.

**III. Plaintiff Has No Support For Her Argument That Section 6851 Can Be Applied To Disclosures That Occurred Pre-October 1, 2022 (Count 2).**

Plaintiff does not dispute that Section 6851 has no retroactive effect. (Opp., at p. 10). Instead, she tautologically argues that disclosures before the effective date, October 1, 2022, should be considered because the statute regulates "disclosure[s.]" (*Id.*). For support, Plaintiff relies upon and distorts the opinions issued in *Ballou v. Wells*, 2024 WL 2328216, 2024 U.S. Dist. LEXIS 91526, at *5 (N.D. Okla. May 22, 2024), and *Luchte v. Coyle*, 2025 WL 2109640, 2025 U.S. Dist. LEXIS 324502, at *8 (D. Idaho May 29, 2025).

Specifically, in *Ballou*, the court held "that 15 U.S.C. § 6851 does not apply retroactively before its effective date of October 1, 2022." 2024 WL 2328216, at *1. Accordingly, it concluded that the pre-statute disclosures made in September 2020 and the summer of 2022 were not actionable; plaintiff was limited to disclosures made after October 1, 2022. *Id.* at *1-*2. In *Luchte*, the court also held that the statute could not be applied retroactively. Rather, incidents of conduct that occurred after the date of enactment (such as showing an older video to other individuals) were timely. 2025 WL 2109640, at *3. In sum, conduct that occurred before October 1, 2022 must be excluded from consideration in evaluating the viability of Plaintiff's Section 6851 claim.

**IV. Hill Did Not Act Within The Scope Of His Employment As A United Pilot When He Shared Plaintiff's Photos Without Consent (Counts 2 and 3).**

To hold United vicariously liable for misconduct that Plaintiff never reported to United, she must establish that Hill acted within the course and scope of his employment as a *pilot* when he took illicit photos of Plaintiff and disclosed them without her consent. Plaintiff attempts to reach this threshold through repeatedly conclusory assertions that it

was so. (*See* Opp., pp. 12-14; Compl. ¶¶ 57, 68, 70-71, 100-1). However, Hill's sexually motivated disclosures, coupled with United's Guidelines prohibiting such disclosures, make it clear that the Hill's misconduct would *not* be tolerated by United. Plaintiff's attempt to hold United vicariously liable for Hill's misconduct therefore fails as a matter of law.

### A. Sexually Motivated Conduct Like Hills' Is Never Within The Scope Of Employment.

An employee's conduct "to fulfill 'sexual urges' almost always fall[s] outside the scope of one's employment." *Trujillo v. Amity Plaza, LLC*, 714 F. Supp. 3d 1302, 1311 (D. Colo. 2024); *see also Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1417-18 (10th Cir. 1987) ("sexual harassment simply is not within the job description of any . . . worker in any reputable business.") (internal quotation marks omitted). Indeed, when a "supervisor act[s] out of . . . a desire to fulfill sexual urges" or "personal motives" he does not advance his employer's business; rather, his actions are considered "antithetical to the business." *Frederick v. Murphy Co. Mech. Contractors*, 2018 WL 11614575, at *4 (D. Colo. Oct. 31, 2018) (cleaned up) (finding employee's conduct outside the scope of his employment where plaintiff alleged that her foreman, spanked, pushed, and made harassing comments toward her). Here, there can be no question that Hill was acting based on his own sexual urges and antithetical to the interests of United, which falls squarely outside the scope of his employment with United.

### B. Hill Was Not "Aided" In The Taking And Sharing Of Explicit Images By Virtue Of His Employment at United.

Plaintiff attempts to argue that the general rule that conduct motivated by sexual urges is outside the scope of employment does not apply here because Hill was allegedly

"'aided in accomplishing the tort by the existence of the agency relation.'" (Opp., at p. 12) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 758 (1998). For this to be even arguable, however, there must be a sufficient nexus between Hill's conduct and his employment with United, which Plaintiff does not have here. Per Plaintiff, she and Hill engaged in "private and consensual interactions." (Compl. 16 ¶¶ 51, 57, 63). She does not claim she ever worked as a Flight Attendant with him during the period of time during which Hill disclosed intimate images of her. (*See generally* Compl.). Moreover, Plaintiff shared nude images and videos of herself with Hill, but requested that he keep the material private. (*Id.* ¶ 57). Further, when Hill began to "stalk and harass" her, he did so by appearing at her "house," "texting her" and showing up at a social "event" she attended. (*Id.* ¶¶ 65-66). The only connection between Hill's conduct and his employment with United is Plaintiff's allegation that she intentionally decided to accompany Hill "as a passenger" on his flights, after which—in hotel rooms outside United's control or domain—he would surreptitiously take photos and videos of Plaintiff without her consent. (*Id.* ¶¶ 51, 56). United did not direct her to be part of any of Hills' flights; she made the personal choice to accompany him "as a passenger." (*Id.*) Additionally, the mere fact that such conduct took place in hotel rooms allegedly paid for by United while Hill was on a layover is insufficient to establish a "nexus," as "there is a marked distinction between an act done by a servant 'during his employment' and an act done within the 'scope of his employment.'" *Frederick*, 2018 WL 11614575, at *4 (internal citation omitted). Plaintiff has alleged only that the acts took place "during employment" but cannot establish that the acts were within the scope of his employment. Accordingly, Plaintiff's attempt to hold

United vicariously liable for Hill's conduct must fail.

### C. Continuing To Employ Hill When United Had No Knowledge Of His Misconduct Is Not Ratification Of His Conduct.

Plaintiff's Opposition fixates on the unsupported claim that United pilots *generally* "used their authority to sexually exploit flight attendants." (Opp., at p. 14). Again, Plaintiff's focus on other pilots is insufficient to establish specific, adequate knowledge—actual, constructive, or otherwise—that would permit a finding that United ratified Hill's conduct. (*See supra*, at Section II). Further, ratification is not established by United's continued employment of Hill after April 2024. (Opp., at p. 14). As Defendant noted in its opening brief, "retention in employment, standing alone, is not conclusive of such ratification." *Klein v. Old Dominion Freight Line, Inc.*, No. 22-cv-01900-STV, 2024 WL 4836236, at *3 (D. Colo. Sep. 6, 2024) (internal citation omitted). This is all that Plaintiff alleges occurred; accordingly, Plaintiff cannot hold United liable for Hill's conduct.

## V. Because United Had No Notice of Hills' Misconduct, Plaintiff's Negligence Claims Fail (Count 4).

### A. Plaintiff's Repeated Contentions That Hill Was An Agent of United Confirms That Her Negligence Claims Are Untimely.

To rebut United's argument that her negligence claims are untimely, Plaintiff avers that she did not become aware of the purported cause of her injury—United—until 2024 and therefore argues her claim against United did not accrue[1] until 2024. (Opp., at p. 15). But again, Plaintiff's own Complaint allegations contradict this assertion. Plaintiff alleges repeatedly that "[a]t all relevant times, Andrew Hill was acting within the course and scope

[1] The assessment of when an action begins to accrue is not based on absolute certainty, as Plaintiff's Opposition suggests, but is one of "reasonable diligence." C. R. S. § 13-80-108(1).

of his employment as a pilot and agent of Defendant United Airlines[.]" (Compl. ¶¶ 2, 46-47, 103, 114, 121). Both cannot be true. Plaintiff could not have learned for the first time in 2024 that her claim accrued yet believed since 2017 that Hill was an "agent" of United. Rather, from the beginning, Plaintiff was aware of both the injury and her now-claimed cause: United. (Opp., at p. 15). Her negligence claims are time-barred.

### B. Plaintiff's Generalized Arguments About Other Pilots' Conduct Does Not State A Negligent Hiring Claim With Respect To Hill.

Plaintiff asserts that "foreseeability" is the key to a claim of negligent hiring. (*Id.* at pp. 15-16). Her argument is predicated on the claim that pilots "work closely", "travel" with, and purportedly "hold positions of authority over flight attendants." (*Id.* at p. 16). Plaintiff further argues that because United was sued in 2018 (resolved in 2020), and that an online article existed about sexual harassment at United "in 2019 and/or 2020," that it should have known at the time it hired Hill in *2016*, that he would share images of Plaintiff without her consent. (*Id.*, at pp. 15-16; Compl. ¶ 51). But negligent hiring claims concern what an employer knew about an employee *at the time of its hiring decision*. *Lindeman v. The Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 43 F. Supp. 3d 1197, 1209 (D. Colo. 2014) (emphasis added). It is not "an insurance policy for all persons injured by persons an employer hires." *Raleigh v. Performance Plumbing & Heating, Inc.*, 130 P.3d 1011, 1017 (Colo. 2006) (noting that for commercial vehicle drivers, employers only "have a duty to investigate an applicant's driving record, in addition to what he . . . provides in response to application questions or an employment interview."). United had no knowledge at the time it hired Hill that he would engage in such conduct or cause injury to any third party. Accordingly, this claim fails.

### C. Plaintiff's Allegations Of United's Purported Knowledge About Other Pilots Fails To State A Negligent Supervision Claim Regarding Hill.

Again, Plaintiff focuses on United's alleged knowledge that pilots purportedly abused their positions over flight attendants. (ECF No. 32, at p. 16). However, whether an employer is liable for negligent supervision is "predicated on the employee's antecedent ability to recognize ***a potential employee's*** 'attributes of character or prior conduct' which would create an undue risk of harm to those with who ***the employee*** came in contact in executing his employment responsibilities." *Keller v. Koca*, 111 P.3d 445, 448 (Colo. 2005) (emphasis added). Thus, the relevant inquiry is not whether and what United supposedly knew about pilots collectively, but what it knew about *Hill* and the risk of harm he alone posed to others. *See id.* As described, *supra*, Plaintiff alleges that United was not aware of Hill's conduct until, at the earliest, after April 2024. The allegations that Plaintiff points to as support for United's alleged knowledge are all things that occurred solely between her and Hill *outside of work*. Plaintiff alleges that Hill used personal (not company) accounts to make disclosures; she does not allege (because she cannot) that Hill used company devices in doing so. Plaintiff's claims are based on disclosures Hill made in his personal capacity, not in any sort of pilot capacity. Therefore, her claim fails.

## <u>CONCLUSION</u>

For these reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Amended Complaint, *with prejudice*, because her claims are fatally flawed and cannot be cured with any amendment.

DATED: March 13, 2026

*<u>/s/ Ada W. Dolph</u>*
Ada W. Dolph
adolph@seyfarth.com
Taylor Iaculla
tiaculla@seyfarth.com
SEYFARTH SHAW LLP
233 S. Wacker Dr., Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

*Attorneys for Defendant*
*United Airlines, Inc.*

## CERTIFICATE OF CONFERRAL

In accordance with Civ. Practice Standard 7.1B, I certify that on December 17, 2025, counsel for Defendant conferred with counsel for Plaintiff regarding the subject-matter of this Motion, who indicated their opposition and confirmed she would not further amend her Complaint at this time.

*/s/ Ada W. Dolph*
Ada W. Dolph

**CERTIFICATE REGARDING THE USE OF GENERATIVE ARTIFICIAL INTELLIGENCE**

I, Ada W. Dolph, hereby certify that generative artificial intelligence was not used to draft this filing.

*/s/ Ada W. Dolph*
Ada W. Dolph

**CERTIFICATE OF SERVICE**

I, Ada W. Dolph, do hereby certify that I have caused a true and correct copy of the foregoing to be served upon all counsel of record, via the Court's ECF system, on March 13, 2026.

*/s/ Ada W. Dolph*
Ada W. Dolph