**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 25-cv-03403-NYW-KAS

LISA DENSON,

Plaintiff,

v.

UNITED AIRLINES, INC.,

Defendant.

---

**ORDER ON MOTION TO DISMISS**

---

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum of Law (the "Motion" or "Motion to Dismiss"). [Doc. 25]. The Court has reviewed the Motion to Dismiss and finds that oral argument would not assist in the Court's resolution of the Motion. For the following reasons, the Motion to Dismiss is respectfully **GRANTED in part** and **DENIED in part**.

**BACKGROUND**

These facts are taken from the Amended Complaint and are presumed true for purposes of this Order. Plaintiff Lisa Denson ("Plaintiff" or "Ms. Denson") is a flight attendant employed by Defendant United Airlines, Inc. ("Defendant" or "United"). [Doc. 16 at ¶ 2]. From approximately 2016 to 2021, Ms. Denson was in a consensual relationship with United pilot Andrew Hill ("Mr. Hill"). [*Id.* at ¶ 51]. In or around 2017, Ms. Denson discovered that Mr. Hill had distributed sexually intimate images and videos of Ms. Denson on the internet without her consent or knowledge. [*Id.* at ¶ 62]. Some of these images and videos were recorded without Ms. Denson's knowledge or consent.

[*Id.* at ¶¶ 57–58, 60]. After Ms. Denson confronted Mr. Hill, he assured her that he had removed the images and videos from the internet. [*Id.* at ¶ 62]. Ms. Denson and Mr. Hill continued to date for several years until Ms. Denson ended the relationship in 2021. [*Id.* at ¶ 63].

After Ms. Denson ended the relationship, Mr. Hill exhibited "increasingly erratic and dangerous" behavior and began "constantly" calling and texting her. [*Id.* at ¶ 64]. In 2022, Mr. Hill began stalking Plaintiff, showing up to her house uninvited and trying to peer through her windows. [*Id.* at ¶ 65]. This harassment continued into 2023. [*Id.* at ¶ 66].

In 2024, another former United flight attendant reported to law enforcement that Mr. Hill had distributed intimate photographs of her online and had impersonated her online. [*Id.* at ¶ 68]. During their investigation, law enforcement learned that Mr. Hill had also been impersonating Ms. Denson online for roughly seven years. [*Id.*]. Investigators also learned that Mr. Hill had digitally distributed intimate videos and images of approximately ten other women, as well, some of whom were also United flight attendants. [*Id.*].

In April 2024, United was informed of the criminal investigation of Mr. Hill and was served with a search warrant and ordered to search its property, including Mr. Hill's employment file, for evidence of the crimes of identify fraud and distribution of pornography. [*Id.* at ¶ 71]. United was specifically informed that Mr. Hill had posted intimate images of Plaintiff. [*Id.*]. Despite this, United did not advise Plaintiff or any other employees about Mr. Hill's conduct; did not terminate Mr. Hill's employment; did not place Mr. Hill on leave; and did not initiate its own investigation. [*Id.*]. Instead, a United manager "falsely told [a] detective that United Airlines had notified Plaintiff of the

detective's report and provided Plaintiff with resources to support her." [*Id.*].

Mr. Hill was arrested in July 2024. [*Id.* at ¶ 73]. After his arrest, United terminated his employment. [*Id.*]. Later in 2024, Mr. Hill pleaded guilty to eight felony counts of distribution of adult pornography, one count of felony stalking, and one count of felony sexual extortion. [*Id.* at ¶ 75].

Plaintiff initiated this lawsuit on October 28, 2025, [Doc. 1], and filed her Amended Complaint on November 24, 2025, [Doc. 16]. She asserts four claims against United: (1) a hostile work environment claim under Title VII, [*id.* at ¶¶ 83–96]; (2) a claim under 15 U.S.C. § 6851(b)(1)(A), which creates a civil cause of action arising out of the unauthorized disclosure of intimate images, [*id.* at ¶¶ 97–108]; (3) a claim under Colo. Rev. Stat. § 13-21-1401, which also provides a cause of action based on the unauthorized disclosure of intimate images, [*id.* at ¶¶ 109–19]; and (4) a claim for negligent hiring, supervision, or retention, [*id.* at ¶¶ 120–24].

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted). The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quotation omitted).

## ANALYSIS

United moves to dismiss all four of Ms. Denson's claims. [Doc. 25]. Ms. Denson opposes the Motion, [Doc. 32], and Defendant has replied, [Doc. 35]. The Court considers the Parties' arguments on a claim-by-claim basis below.[1]

### I. Claim One: Hostile Work Environment

United asks the Court to dismiss Claim One on the following grounds: (1) the claim is not timely to the extent it is based on acts occurring before February 8, 2024 because Plaintiff did not file a charge of discrimination with the EEOC until December 4, 2024; and (2) the claim fails under Rule 12(b)(6) because there are no allegations that United was aware of Mr. Hill's conduct. [Doc. 25 at 12–14].[2]

#### A. Timeliness

"Under Title VII, a plaintiff must file a timely charge with the EEOC or a state agency before filing suit." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 922 (10th Cir.

---

[1] Defendant asks this Court to consider its "Working Together Guidelines" in ruling on the Motion to Dismiss. [Doc. 25 at 8 & n.1]. "A district court may . . . consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (quotation omitted). United asserts that the Working Together Guidelines "are central to [Plaintiff's] claims," but offers no argument in support. [Doc. 25 at 8 n.1]. The Court respectfully disagrees that the Working Together Deadlines are *central* to Plaintiff's claims, given that they are referenced just one time, in passing, in Plaintiff's 124-paragraph Amended Complaint, and none of Plaintiff's claims rely on the Guidelines. [Doc. 16 at ¶ 77]; *see also Drobek v. Gov't Emps. Ins. Co.*, No. 16-cv-02512-MSK-NYW, 2017 WL 11546220, at *3 (D. Colo. June 9, 2017) ("A document is central to a plaintiff's claim if the plaintiff relies on it to assert the claim."). Accordingly, the Court finds that it would be inappropriate to consider this document at this juncture.

[2] When citing to docket entries, the Court cites to the page numbers assigned by the CM/ECF system rather than the page numbers assigned by the Parties.

2016). The charge must be filed "within 300 days of the allegedly discriminatory employment practice." *Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1304 (10th Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)).

United argues that because Ms. Denson filed her EEOC charge on December 4, 2024, "any conduct occurring before February 8, 2024 . . . cannot support her Title VII claim." [Doc. 25 at 13]. But as Plaintiff points out, [Doc. 32 at 8], "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice,'" *Hansen*, 844 F.3d at 923 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* (quoting *Morgan*, 536 U.S. at 117). United does not respond to this argument in its reply brief or explain why this rule is inapplicable here. *See* [Doc. 35]. Because Plaintiff alleges that Mr. Hill's harassing conduct continued through at least April 2024, [Doc. 16 at ¶ 68], and Defendant does not explain why, despite this allegation, Plaintiff's Title VII claim is untimely, the Court declines to dismiss Claim One on this basis.

**B. The Sufficiency of Plaintiff's Allegations**

To state a hostile work environment claim, a plaintiff must allege "(1) membership in a protected class; (2) [s]he was subjected to unwelcome harassment; (3) the harassment was due to [the plaintiff's protected characteristic]; and (4) the harassment was so severe or pervasive that it altered a term, condition, or privilege of h[er] employment and created an abusive environment." *Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1249 (10th Cir. 2024). "An employer is directly liable for a hostile work

environment created by any employee if the employer's negligence causes the actionable work environment." *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 650 (10th Cir. 2013) (quotation omitted). In other words, "an employer is liable for a claim of hostile work environment only if it knew, or should have known, about the hostile work environment and failed to respond in an appropriate manner." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1230 (10th Cir. 2022) (cleaned up).

"A plaintiff can show [an employer's] actual knowledge by showing she 'reported harassment to management-level employees' and can show constructive knowledge if 'the pervasiveness of sexual harassment can properly lead to an inference of knowledge.'" *Jackson v. Kan. City Kan. Pub. Schs. Unified Sch. Dist. No. 500*, 799 F. App'x 586, 591 (10th Cir. 2020) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998)). To plausibly allege an inference of the employer's knowledge, the plaintiff must allege facts showing that the harassment was "so egregious, numerous, and concentrated as to add up to a campaign of harassment." *Id.* (quotation omitted).

Ms. Denson contends that the following allegations are sufficient to show such pervasive harassment that United's knowledge of the harassment can be inferred: (1) Mr. Hill harassed and distributed images of Ms. Denson for years, [Doc. 32 at 9 (citing Doc. 16 at ¶¶ 60–63, 68–69)]; (2) Mr. Hill distributed intimate pictures of approximately ten other women, some of whom were United employees, [*id.* (citing Doc. 16 at ¶ 68)]; (3) in 2011 and 2012, another United flight attendant reported sexual exploitation by another United pilot, [*id.* (citing Doc. 16 at ¶ 10)], and in 2018, the EEOC sued United on behalf of this employee, [*id.* (citing Doc. 16 at ¶¶ 9–11, 75)], which ultimately led to United entering into a consent decree that required United to revise its sexual harassment

policies, [*id.* (citing Doc. 16 at ¶¶ 9–11, 75)] and (4) some of the distributed images depicted Ms. Denson in her United uniform and identified her as a flight attendant, [*id.* (citing Doc. 16 at ¶¶ 60, 70)].

The Court respectfully disagrees that these allegations are sufficient to create a reasonable inference that United knew or should have known of Mr. Hill's harassing conduct. Ms. Denson does not allege that Mr. Hill's harassing conduct occurred at the workplace, during working hours, or in front of other United employees. Nor does she allege that she reported any of Mr. Hill's conduct to anyone at United, told other United employees about Mr. Hill's conduct, or otherwise brought Mr. Hill's conduct into the workplace. While "egregious, numerous, and concentrated" harassment may be sufficient to create an inference of an employer's knowledge of that harassment, *Jackson*, 799 F. App'x at 591, a necessary component of this standard is that the harassment must have been actually discoverable by the employer: "highly pervasive harassment should, in the exercise of reasonable care, be discovered by management-level employees," *Adler*, 144 F.3d at 673. Even though Plaintiff alleges that this conduct took place over several years and involved numerous United flight attendants, it is unclear to the Court how United's knowledge of that conduct can be inferred without any allegations establishing that United had any opportunity to know about this conduct.

To be clear, this Court does *not* hold that acts occurring outside of the workplace are not actionable under Title VII or cannot support a hostile work environment claim as a matter of law. Rather, this Court's focus is on United's knowledge of such harassment and whether Plaintiff can plausibly allege constructive knowledge where *none* of the alleged harassment or exploitation took place or was raised in the workplace setting. *Cf.*

*Parker v. Side by Side, Inc.*, 50 F. Supp. 3d 988, 1010 (N.D. Ill. 2014) (at summary judgment, finding that no reasonable jury could find employer had constructive knowledge of harassment where "most of the incidents occurred outside of work or in areas of the [workplace] where others could not observe it").

As for the allegations that a different United pilot had engaged in similar misconduct against a different United flight attendant, while these allegations are troubling, they do not create an inference of United's constructive knowledge of *Mr. Hill's actions toward Ms. Denson*. *Cf. Ford v. West*, 222 F.3d 767, 776 (10th Cir. 2000) ("Contrary to Plaintiff's assertion, however, we do not believe two EEO cases resolved more than ten years before Plaintiff filed the instant complaint establish a pattern of continuous proven harassment sufficient to give his employer actual or constructive notice of the alleged harassment."); *Frank v. Heartland Rehab. Hosp., LLC*, No. 22-3031, 2023 WL 4444655, at *4 (10th Cir. July 11, 2023) (finding that complaint of similar inappropriate behavior "well over a year before" the defendant began harassing the plaintiff was not sufficient to establish constructive notice). Egregious behavior by one pilot towards a different individual does not permit an inference that United had constructive knowledge of another pilot's egregious behavior against Plaintiff several years later.

The Court respectfully finds that Ms. Denson's arguments are insufficient to plausibly allege that United knew or should have known of Mr. Hill's harassing conduct. For this reason, the Motion to Dismiss is **GRANTED** as to Claim One. Claim One is **DISMISSED without prejudice**.[3]

[3] Defendant argues that Plaintiff's claims should be dismissed with prejudice "because her claims are fatally flawed and cannot be cured with any amendment." [Doc. 25 at 25]. "A dismissal with prejudice is appropriate where a complaint fails to state a claim under

## II. Claims Two and Three: 15 U.S.C. § 6851 and Colo. Rev. Stat. § 13-21-1403

Claims Two and Three are asserted under similar federal and state statutes that create a private cause of action to recover for damages arising out of the unauthorized distribution of intimate images. The federal statute provides:

> [A]n individual whose intimate visual depiction is disclosed . . . without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person . . . .

15 U.S.C. § 6851(b)(1)(A). Similarly, under Colorado law,

> [A] depicted individual who is identifiable and who has suffered harm from a person's intentional disclosure or threatened disclosure of an intimate image that was private without the depicted individual's consent has a cause of action against the person if the person knew or acted with reckless disregard for whether: (a) The depicted individual did not consent to the disclosure; (b) The intimate image was private; and (c) The depicted individual was identifiable.

Colo. Rev. Stat. § 13-21-1403(2).

Defendant moves to dismiss these claims on the grounds that the plain language of each statute only authorizes a cause of action against the person who improperly distributed the images. [Doc. 25 at 15–18]. Relatedly, it contends that United cannot be held vicariously liable for Mr. Hill's actions under either statute. [*Id.* at 18–21].

In her response, Ms. Denson does not contest United's argument about the plain language of the statutes. *See* [Doc. 32]. And indeed, the Court agrees that each statute

---

Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Defendant's argument is insufficient to meaningfully assert that amendment would be futile, and the Court declines to undertake a futility analysis sua sponte. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."). Accordingly, Claim One is dismissed without prejudice.

contemplates only a cause of action against the distributor. *See* 15 U.S.C. § 6851(b)(1)(A) ("[A]n individual whose intimate visual depiction is disclosed, . . . where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person. . . ." (emphasis added)); Colo. Rev. Stat. § 13-21-1403(2) ("[A] depicted individual who is identifiable and who has suffered harm from a person's intentional disclosure or threatened disclosure of an intimate image that was private without the depicted individual's consent has a cause of action against the person. . . ." (emphasis added)). Ms. Denson contends, however, that United may be held liable for Mr. Hill's conduct "under traditional vicarious liability principles." [Doc. 32 at 11].

The Supreme Court "has assumed that, when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley*, 537 U.S. 280, 285 (2003) (collecting cases). And "[i]t is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Id.* Similarly, Colorado courts "generally construe statutes as consistent with the common law." *Rieger v. Wat Buddhawararam of Denv., Inc.*, 338 P.3d 404, 410 (Colo. App. 2013); *see also Est. of Harper ex rel. Al-Hamim v. Denver Health & Hosp. Auth.*, 140 P.3d 273, 277 (Colo. App. 2006) ("A statute does not alter the common law except to the extent the statute expressly so provides." (citations omitted)).

Because § 6851(b)(1)(A) and § 13-21-1403(2) are silent with respect to vicarious liability and do not expressly preclude application of vicarious liability principles, the Court

assumes without deciding that vicarious liability is available under both statutes. *Cf. Doe v. T-Mobile USA, Inc.*, No. 4:23-cv-05166-SAB, 2024 WL 1705925, at *4 (E.D. Wash. Apr. 19, 2024) ("[Section 6851] is silent as to vicarious liability and as such, under Ninth Circuit precedent, the Court concludes that Congress intended that a defendant can be held vicariously liable for a violation of § 6851, using common law vicarious liability principles.").

Ms. Doe asserts three theories under which she contends United may be held vicariously liable for Mr. Hill's conduct under § 6851(b)(1)(A) and § 13-21-1403(2): (a) scope of employment; (b) aid by agency; and (c) ratification. [Doc. 32 at 12]. The Court's analysis of these theories with respect to the federal claim is controlled by federal common law, *see Trujillo v. Amity Plaza, LLC*, --- F. 4th ----, 2026 WL 2146803, at *3 (10th Cir. July 27, 2026), and its analysis on the state claim is controlled by Colorado law.

**A. Scope of Employment**

"Tenth Circuit courts apply common law agency principles from the Restatement (Third) of Agency." *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021) (citing *United States v. Speakman*, 594 F.3d 1165, 1173 (10th Cir. 2010)).[4] Colorado courts, meanwhile, tend to rely on the Restatement (Second) of Agency. *See, e.g.*, *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 472 (Colo. 1995); *Moses v. Diocese of Colo.*, 863 P.2d 310, 329 (Colo. 1993). The Restatement (Third) of Agency provides:

> An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not

[4] Although Restatements of Law are not binding, they "can be instructive." *Trujillo*, 2026 WL 2146803, at *3; *see also id.* at *3–4 (relying on the Restatement (Third) of Agency to discuss vicarious liability).

intended by the employee to serve any purpose of the employer.

Restatement (Third) Of Agency § 7.07(2) (A.L.I. 2006). Similarly, the Restatement (Second) of Agency "restricts vicarious liability for tortious conduct to actions that 'should be considered as one of the normal risks to be borne by the business in which the servant is employed.'" *Moses*, 863 P.2d at 330 n.27 (quoting Restatement (Second) of Agency § 229 cmt. a (A.L.I. 1958)). Under Colorado law, "[a]n employee's actions are deemed to be within the scope of employment when an employee directly participates in activities assigned or directed by the employer." *Md. Cas. Co. v. Messina*, 874 P.2d 1058, 1063 (Colo. 1994).

Here, Ms. Denson argues that Mr. Hill "acted within the course and scope of his employment when he misused his authority, access, and work conditions to obtain and disclose intimate images depicting Plaintiff." [Doc. 32 at 12]. This assertion is not supported by any legal authority or additional argument, *see* [*id.*], and is respectfully unpersuasive. Plaintiff does not allege that Mr. Hill's conduct was assigned, directed, or controlled by United. *See* [Doc. 16]. And although Plaintiff alleges that some of Mr. Hill's conduct occurred in hotel rooms paid for by United, *see* [*id.* at ¶ 60], and that Mr. Hill "possibly" used devices United paid for to distribute the images, [*id.* at ¶ 56], these allegations do not plausibly establish that Mr. Hill acted within the scope of his employment when he distributed explicit images and videos of Ms. Denson.

Moreover, under Colorado law, vicarious liability also requires that "the agent's intent in committing the tortious act must be to further the employer's business." *Moses*, 863 P.2d at 330 n.27. "[I]f an employee commits an intentional tort solely for reasons that do not further his employer's business or cannot be considered a natural incident of

employment, the employer cannot be vicariously liable." *Id.* Ms. Denson does not allege that Mr. Hill's actions were intended to further United's business. *See* [Doc. 16].

For these reasons, Ms. Denson has not alleged sufficient facts to support a scope-of-employment theory of vicarious liability.

**B. Agency Relationship**

"Scope of employment does not define the only basis for employer liability under agency principles." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 758 (1998). "In limited circumstances, agency principles impose liability on employers even where employees commit torts outside the scope of employment." *Id.* (emphasis added).

Ms. Denson asserts two additional theories under which she believes United can be vicariously liable for Mr. Hill's actions taken outside the scope of his employment: an "aided-by agency" theory and a ratification theory. [Doc. 32 at 8–10].

***Aided by Agency.*** Before turning to this theory's application to this case, a review of its historical application is helpful. The Restatement (Second) of Agency provides in pertinent part that "[a] master" may be "subject to liability for the torts of his servants acting outside the scope of their employment" if the agent "was aided in accomplishing the tort by the existence of the agency relation." Restatement (Second) of Agency § 219(2)(d). In *Ellerth*, 524 U.S. 742, and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), the Supreme Court held that, in the context of Title VII claims, an employer may be "subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Ellerth*, 524 U.S. at 764–65; *Faragher*, 524 U.S. at 807. *Ellerth* and *Faragher* established a framework for such cases:

> Under the *Faragher*/*Ellerth* framework, an employer is subject to vicarious liability for actionable sexual harassment perpetrated by a supervisor with immediate (or successively higher) authority over the victimized employee in two situations. First, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment, the employer is strictly liable and no affirmative defense is available. Second, in the absence of a tangible employment action, the employer is liable unless it can prove an affirmative defense by a preponderance of the evidence. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Helm v. Kansas*, 656 F.3d 1277, 1285 (10th Cir. 2011) (cleaned up).

Notably, however, the *Ellerth* Court also cautioned against too broad an application of the aided-by-agency theory:

> In a sense, most workplace tortfeasors are aided in accomplishing their tortious objective by the existence of the agency relation: Proximity and regular contact may afford a captive pool of potential victims. Were this to satisfy the aided in the agency relation standard, an employer would be subject to vicarious liability not only for all supervisor harassment, but also for all co-worker harassment. . . . The aided in the agency relation standard, therefore, requires the existence of something more than the employment relation itself.

524 U.S. at 760 (cleaned up). The *Ellerth* Court described the Restatement (Second) of Agency as "a useful beginning point for a discussion of general agency principles," *id.* at 755, but it did not expressly adopt the aided-by-agency theory outside of the narrow Title VII context addressed in that decision. The framework announced in *Ellerth* and *Faragher* is now a well-established approach to Title VII harassment cases. *See, e.g.*, *Helm*, 656 F.3d at 1285.

Plaintiff proceeds as if the aided-by-agency principle applies to her claims under § 6851 and § 13-21-1403, but she does not raise an argument in support of its application

in this context. *See* [Doc. 32 at 12–13]. Defendant assumes that it applies as well. [Doc. 35 at 7–8]. But in the Court's view, whether the aided-by-agency principle applies to Plaintiff's claims under § 6851 and § 13-21-1403 is less straightforward than the Parties suggest.

The Tenth Circuit recently ruled that, in *Ellerth* and *Faragher*, "the Supreme Court . . . incorporated the [aided-by-agency] exception into federal law via the general common law of agency." *Trujillo*, 2026 WL 2146803, at *3–4. And because this Court has assumed without deciding that vicarious-liability principles apply to Plaintiff's claim under § 6851, the Court will also assume that the aided-by-agency principle applies to Plaintiff's federal claim.

As for Plaintiff's state claim, the Restatement (Second) of Agency, which Colorado courts often follow, does not fully endorse the aided-by-agency theory, stating that "[t]he second part of § 219(2)(d), regarding the 'aided-by-agency' theory of vicarious liability, was not approved by the [American Law Institute ('ALI')] membership and thus did not represent the position of the ALI. It has since been superseded by the Restatement of the Law Third, Agency." Restatement (Second) of Agency § 219; *see also* Restatement (Third) of Agency § 7.08 cmt. b ("This Restatement does not include 'aided in accomplishing' as a distinct basis for an employer's (or principal's) vicarious liability. The purposes likely intended to be met by the 'aided in accomplishing' basis are satisfied by a more fully elaborated treatment of apparent authority and by the duty of reasonable care that a principal owes to third parties with whom it interacts through employees and other agents."). Courts have therefore expressed skepticism about the aided-by-agency theory's application to state-law claims. *See, e.g.*, *Pena v. Greffet*, 110 F. Supp. 3d 1103,

1131 (D.N.M. 2015) ("The *Third Restatement*'s dismissive treatment of the aided-in-agency theory raises questions as to whether courts were ever correct to apply it, and, even if so, whether they should continue to apply it—given that the theory was a whole-cloth creation of an earlier *Restatement*—in contexts beyond those in which controlling authority mandates its application, *e.g.*, Title VII."); *see also Zsigo v. Hurley Med. Ctr.*, 716 N.W.2d 220, 226 (Mich. 2006) ("Courts have criticized § 219(2)(d) primarily because the exception swallows the rule and amounts to an imposition of strict liability upon employers.").

Plaintiff cites no Colorado state-court cases adopting the aided-by-agency theory, *see* [Doc. 32 at 12–13], and the Court could not independently locate any. Because (1) the aided-by-agency theory is not fully endorsed by the Restatement (Second) of Agency, (2) Colorado courts have not expanded applied the aided-by-agency theory, and (3) Plaintiff raises no argument explaining why the theory should apply in this context, *see* [*id.*], the Court respectfully declines to hold that the aided-by-agency theory is an available theory to establish vicarious liability under Colo. Rev. Stat. § 13-21-1403, *see Miles v. Simmons Univ.*, 514 F. Supp. 3d 1070, 1079 (D. Minn. 2021) (concluding that the plaintiff could not rely on the aided-by-agency theory to bring tort claims based on professor's recording and posting of video taken during class).

But even if Plaintiff could rely on this theory for her state claim, her allegations do not plausibly support an aided-by-agency theory for the federal claim or the state claim. "[T]he bar for triggering the [aided-by-agency] exception is high," *Trujillo*, 2026 WL 2146803, at *5, and "[c]ourts that have adopted the aided-by-agency theory have interpreted it narrowly and sparingly," *P.J. v. City of Jersey City*, No. 21-cv-20222-EPC-

LW, 2022 WL 16949544, at *6 (D.N.J. Nov. 15, 2022) (emphasis omitted). The justification for applying the theory is that "the tortfeasor has capitalized on the *power* that the employer gave the tortfeasor, and not merely the opportunity." *Miles*, 514 F. Supp. 3d at 1079 (quoting *Spurlock v. Townes*, 368 P.3d 1213, 1217 (N.M. 2016)); *Trujillo*, 2026 WL 2146803, at *6 ("The employee needs to actually use and be *aided* by that authority or privilege when committing a tort."). And an employee's employment only "aids" the commission of a tort in two circumstances: first, "when an employee exercises significant authority over a tort victim by virtue of his employment," and second, "when an employee gains a special privilege or access that is not available to the general public." *Trujillo*, 2026 WL 2146803, at *6.

Here, Plaintiff argues that Mr. Hill exercised supervisory authority over flight attendants and used hotel rooms paid for by United to obtain images and videos of Plaintiff without her consent. [Doc. 32 at 13]; *see also* [Doc. 16 at ¶¶ 51, 60–61]. But she does not allege facts showing that it was Mr. Hill's supervisory authority over Plaintiff or access to hotel rooms gave him the *power* to commit his tortious conduct, as opposed to simply the opportunity. The fact that an "employee's work afforded him an opportunity to commit the tort is insufficient to make an employer vicariously liable." *York v. Karbah*, No. 20-cv-03669-RC, 2021 WL 5998390, at *7 (D.D.C. Dec. 19, 2021) (cleaned up). "And 'a master is not liable for harm caused by the use of instrumentalities entrusted by him to a servant when they are not used in the scope of employment.'" *Id.* (quoting Restatement (Second) of Agency § 238). Furthermore, Plaintiff does not allege facts suggesting that this is a case where Mr. Hill exercised "significant authority" over her and that this supervisory authority *actually aided* in the commission of the tort. *See* [Doc. 16 at ¶ 51

(alleging that Mr. Hill "exercised supervisory authority over flight attendants *during flights* due to the nature of his job and rank" (emphasis added))]; *Trujillo*, 2026 WL 2146803, at *6 ("[T]he mere presence of some sort of authority . . . is not enough on its own to trigger the exception."). Similarly, she does not allege that Mr. Hill's access to hotel rooms was some sort of special privilege not available to the general public. *See* [Doc. 16]; *Trujillo*, 2026 WL 2146803, at *6 ("The key to this special privilege rule is that the privilege or access must be "unique" and not available to the public writ large.").

For these reasons, Ms. Denson cannot rely on an aided-by-agency theory to establish United's vicarious liability under § 6851 or § 13-21-1403.

***Ratification.*** Alternatively, Plaintiff argues that she "has alleged sufficient facts to establish that United ratified Hill's misconduct." [Doc. 32 at 14].

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) Of Agency § 4.01(1). "Ratification does not occur unless (a) the act is ratifiable . . ., (b) the person ratifying has capacity . . ., (c) the ratification is timely . . ., and (d) the ratification encompasses the act in its entirety." *Id.* § 4.01(3); *see also Fresquez v. Trinidad Inn, Inc.*, 521 P.3d 399, 411 (Colo. App. 2022) ("Ratification occurs when a party with knowledge of all material facts adopts and confirms an act performed or entered into on his behalf by another, without authorization." (quotation omitted)).

Ms. Denson argues first that "[f]or years, United had notice that its pilots used their authority to sexually exploit flight attendants," relying again on the EEOC litigation involving a different pilot and a different flight attendant. [Doc. 32 at 14]. These allegations are insufficient to plausibly allege that United ratified Mr. Hill's tortious conduct

because these facts do not establish that United knew of *Mr. Hill's* tortious conduct. "A person who has ratified is not bound by the ratification if it was made without knowledge of material facts about the act of the agent or other actor." Restatement (Third) Of Agency § 4.06 cmt. b; *see also Siener v. Zeff*, 194 P.3d 467, 472 (Colo. App. 2008) ("[A] principal must have full knowledge of all material facts of the transaction prior to the ratification, or at least knowledge of facts that would lead a reasonable person to investigate further."). Ms. Denson does not allege that United was aware of any of Mr. Hill's conduct before April 2024, *see* [Doc. 16], and thus does not plausibly allege that United ratified his pre-April 2024 conduct.

Ms. Denson also argues that, by failing to terminate or investigate Mr. Hill after it learned of his conduct in April 2024, United ratified Mr. Hill's actions. [Doc. 32 at 14]. However, "retention in employment, standing alone, is not conclusive of such ratification." *Frick v. Abell*, 602 P.2d 852, 856 (Colo. 1979); *see also Klein v. Old Dominion Freight Line, Inc.*, No. 22-cv-01900-STV, 2024 WL 4836236, at *3 (D. Colo. Sept. 6, 2024). The fact that United failed to fire Mr. Hill is insufficient to plausibly allege that it ratified Mr. Hill's conduct. Moreover, "[a]n employer's ratification establishes liability only if the unauthorized employee or agent acted or purported to act on the employer's behalf." Restatement of Employment Law § 4.03 cmt. e (A.L.I. 2015) (citing Restatement (Third) of Agency, §§ 4.01, 4.03). Ms. Denson does not allege that Mr. Hill acted on United's behalf when he surreptitiously took intimate photos and videos of her and distributed them on the internet. *See* [Doc. 16].

For these reasons, the Court concludes that, even assuming that vicarious liability is available under 15 U.S.C. § 6851 and Colo. Rev. Stat. § 13-21-1403, Ms. Denson has

not alleged facts to support a plausible vicarious liability theory against United as to either claim. Accordingly, the Motion to Dismiss is respectfully **GRANTED** as to Claims Two and Three, and those claims are **DISMISSED without prejudice** under Rule 12(b)(6).

## III. Claim Four: Negligent Hiring, Supervision, or Retention

Finally, Plaintiff asserts that United Airlines owed Plaintiff a duty to "appreciate the danger that Andrew Hill posed" and breached that duty "when it failed to adequately supervise and/or retain Andrew Hill to prevent the continued harassment and discrimination of Plaintiff." [Doc. 16 at ¶¶ 122–23]. Defendant argues that Claim Four, which alleges negligent hiring, supervision, or retention, should be dismissed because (1) it is untimely, as it was not filed within Colorado's two-year statute of limitations for negligence claims, and (2) Plaintiff's allegations are insufficient to state a claim under Rule 12(b)(6). [Doc. 25 at 21–24].

### A. Timeliness

Defendant contends that Plaintiff's negligence claim is untimely because she alleges that Mr. Hill began stalking and harassing her in 2022, and "[u]sing the last possible day of 2022, Plaintiff's alleged injury accrued no later than December 31, 2022." [*Id.* at 21]. Therefore, Defendant argues, Plaintiff failed to comply with Colorado's two-year statute of limitations for negligence claims. *See* Colo. Rev. Stat. § 13-80-102(1)(a). Ms. Denson disagrees, arguing that her claims are timely because she alleges that Mr. Hill continued to stalk her in 2023 and continued to distribute the images in 2024. [Doc. 32 at 15]. She also argues that "[i]t is reasonable to infer that Plaintiff did not know that United's negligence was a cause of her ongoing harm until it failed to act even after it was served with a search warrant concerning Hill's crimes against flight attendants." [*Id.*].

"Typically, facts must be developed to support dismissing a case based on the statute of limitations." *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022). A statute of limitations defense may be addressed through a Rule 12(b)(6) motion only "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (quotation omitted); *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (a claim can be dismissed under Rule 12(b)(6) based on the statute of limitations "only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements").

At this juncture, the Court cannot and does not pass on the timeliness of Plaintiff's claims. Because the Amended Complaint alleges acts occurring in 2024, including but not limited to United's alleged failure to terminate Mr. Hill after it learned of his conduct, this Court cannot definitively determine when Plaintiff's negligence claim accrued. *See* Colo. Rev. Stat. § 13-80-108(1) (a claim accrues "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence"). Thus, the Amended Complaint does not "make clear" that Plaintiff's claim is untimely, *Sierra Club*, 816 F.3d at 671, and dismissal is not warranted on this basis.

**B. The Sufficiency of Plaintiff's Allegations**

Alternatively, United argues that Ms. Denson fails to state a claim under Rule 12(b)(6). [Doc. 25 at 22–24]. "[A] claimant alleging negligence of another party must establish the existence of a duty, a breach of that duty, causation, and damages." *Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 80 (Colo. 2001). Under Colorado law, "[a] defendant owes a plaintiff a legal duty in hiring employees where an employer had reason

to believe that, because . . . ‘of some attribute of character or prior conduct, the employee would create an undue risk of harm to the plaintiff in carrying out his or her employment responsibilities.’” *Blanco v. HCA-Healthone, LLC*, No. 19-cv-00928-PAB-SKC, 2020 WL 5760452, at *5 (D. Colo. Sept. 28, 2020) (quoting *Raleigh v. Performance Plumbing and Heating*, 130 P.3d 1011, 1016 (Colo. 2006)) (cleaned up). And a defendant may be held liable for negligent supervision “where ‘the defendant knew his employee posed a risk of harm to the plaintiff and that the harm that occurred was a foreseeable manifestation of that risk.’” *Id.* (quoting *Keller v. Koca*, 111 P.3d 445, 446 (Colo. 2005)).[5]

United argues that Ms. Denson cannot state a claim for negligent hiring because she “does not allege that United had any knowledge at the time of Hill’s hiring of any characteristic of prior conduct of Hill’s that would have created an unreasonable risk of harm to third parties or that he caused her injury.” [Doc. 25 at 22]. Ms. Denson disagrees, arguing that she has stated a claim for negligent hiring because “United knew for years . . . that its pilots used their authority to sexually exploit flight attendants, including by distributing intimate images online, resulting in EEOC litigation and a consent decree mandating United to address internet harassment.” [Doc. 32 at 16 (citing Doc. 16 at ¶¶ 9–11, 75)]. She argues that “[p]lacing a pilot in a position of authority with continued access

[5] Courts in this District have recognized that “[i]t is not altogether clear that Colorado recognizes a distinct tort of negligent retention.” *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1145 (D. Colo. 2019). Instead, “Colorado courts have treated claims of negligent supervision and negligent retention as one and the same.” *Id.* (citing cases); *see also Trujillo v. Moore Bros., Inc.*, No. 23-cv-00802-RM-SBP, 2024 WL 1219701, at *5 n.4 (D. Colo. Mar. 1, 2024) (“[I]t does not appear that Colorado law has developed a separate legal standard for negligent retention versus hiring and supervision.”), *recommendation adopted*, 2024 WL 1216382 (D. Colo. Mar. 21, 2024). Plaintiff addresses her negligent supervision and retention theories together, *see* [Doc. 16 at ¶ 123; Doc. 32 at 16–17], and the Court does the same.

to flight attendants, without reasonable protections to prevent the known risks of online sexual exploitation, created a foreseeable risk of harm." [*Id.*].

The Court is respectfully unpersuaded by this argument. As Defendant points out, Plaintiff alleges no facts about *Mr. Hill* that would have given United "reason to believe that . . . [Mr. Hill] would create an undue risk of harm to [Ms. Denson] in carrying out his or her employment responsibilities." *Raleigh*, 130 P.3d at 1016. Allegations that a different pilot had sexually harassed or exploited a different flight attendant are insufficient to plausibly allege that United was negligent in hiring Mr. Hill.

As for negligent supervision or retention, United asserts that "[b]ased on Plaintiff's allegations, United did not, and could not, have possessed actual or constructive knowledge prior to April 2024" that Mr. Hill posed a risk to Plaintiff. [Doc. 25 at 23]. Plaintiff responds by again asserting that "United was aware for years that pilots used their positions to sexually exploit flight attendants." [Doc. 32 at 16]. But like Plaintiff's negligent hiring theory, there are no allegations plausibly establishing that United "knew [its] employee"—Mr. Hill—"posed a risk of harm to the plaintiff"—Ms. Denson, *Keller*, 111 P.3d at 446, or establishing that United was negligent in supervising or retaining Mr. Hill prior to April 2024.

As for United's failure to terminate Mr. Hill after United learned of his conduct in April 2024, United contends that the claim should be dismissed under Rule 12(b)(6) because Ms. Denson does not allege that she suffered any injury after April 2024 or that any such injury was caused by United's retention of Mr. Hill. [Doc. 25 at 24]. It insists that even if it breached a duty to Plaintiff by failing to terminate Mr. Hill in April 2024, this did not cause any injury to Plaintiff because "conduct ceased in April 2024." [*Id.*].

This argument disregards Ms. Denson's allegation that "after receiving the phone call from the detective working on Andrew Hill's case in July 2024, but before Andrew Hill was arrested, Plaintiff took off a few days from work due to the anxiety she felt about Andrew Hill's crimes and United's failure to take appropriate preventative or corrective action." [Doc. 16 at ¶ 78]. She also alleges that "United's failure to address the matter effectively . . . interfere[ed] with Plaintiff's performance as a Flight Attendant as personal rapport and congeniality with United's staff and customers are key elements of her successful job performance." [*Id.* at ¶ 79]. Based on these allegations, in combination with the other allegations detailing Mr. Hill's conduct and United's retention of Mr. Hill after it learned of that conduct, the Court finds that Ms. Denson has plausibly alleged an injury caused by United's retention of Mr. Hill after it learned of his conduct. Accordingly, the Court will not dismiss Claim Four at this time, but the claim will be limited to United's alleged actions after April 2024.

**CONCLUSION**

For the reasons set forth above, **IT IS ORDERED** that:

(1) Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum of Law [Doc. 25] is **GRANTED in part** and **DENIED in part**; and

(2) Claims One, Two, and Three are **DISMISSED without prejudice** under Rule 12(b)(6).

DATED: August 19, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge